PIERCE OIL CORPORATION v.
UNITED STATES.
No. 45442.

Court of Claims.
June 5, 1944.

740

Eugene Untermyer, of Washington, D. C. (Edgar J. Goodrich and Guggenheimer, Untermyer & Goodrich, all of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The Pierce Oil Corporation and its receivers, herein referred to as "plaintiff", brought this suit under section 821 of the Revenue Act of 1938, 52 Stat. 447, Title 26 U.S.C.A. Int.Rev.Code, § 3794 note, upon rejected claims for refund to recover $166,-670.88 representing one-half of alleged accrued interest of 12 percent per annum from October 24, 1933 to August 30, 1935, which interest it is alleged accrued and was paid for the period January 13, 1933 to August 30, 1935 upon additional income taxes. The several amounts making up the total sought to be recovered as interest paid are $70,601.53 for 1918, $81,156.61 for 1919, and $14,912.73 for 1920.

Section 821, supra, is as follows:

"*Interest accruing after October 24, 1933, and before August 30, 1935, on delinquent income, estate, and gift taxes.*

"Interest accruing after October 24, 1933, and prior to August 30, 1935, on delinquent income, estate, and gift taxes shall be computed at the rate of 6 per centum per annum. Any such interest accruing during such period which has been collected prior to the date of the enactment of this Act in excess of such rate shall be credited or refunded to the taxpayer, if claim therefor is filed within six months after the date of the enactment of this Act. No interest shall be allowed or paid on any such credit or refund."

The above-quoted section was included in the Revenue Act of 1938 as a Senate Amendment offered on the Senate Floor while the act was under consideration and was agreed to on April 9, 1938, at which time the following occurred (Cong. Record. Vol. 83, Part 5, p. 5174):

"Mr. King. Mr. President, I send to the desk an amendment, with an explanation of it which I ask to have printed in the Record.

"The Vice President. The amendment will be stated.

"The Chief Clerk. On page 369, between lines 7 and 8, it is proposed to insert the following new section: * * *

"Mr. Harrison. I have no objection to that amendment.

"The Vice President. Without objection, the amendment is agreed to; and, without objection, the explanation submitted by the Senator from Utah will be printed in the Record.

"The explanation is as follows:

"The purpose of this amendment is to reduce from 12 percent to 6 percent the interest rate in the case of a few taxpayers who during the depression were compelled to obtain extensions of time to pay their taxes. For many years the Treasury in such cases compromised interest liability for 6 percent, and in 1935 the exclusive 12-percent rate was reduced to 6 percent on the recommendation of the Treasury. In the case of a comparatively few, however, the Treasury was prevented from compromising and was compelled to collect the 12 percent because of an opinion of the Attorney General rendered in October 1933. This amendment cures the discrimination against those few taxpayers and gives equal treatment to all."

Plaintiff's claims for refund of alleged accrued interest in excess of 6 percent which it claimed to have paid were grounded wholly upon the provisions of section 821, and the only facts relied upon in support of those claims consisted of a computation, the results of which are set forth in finding 12, and which was made under the circumstances and in the manner set forth in finding 18. The grounds and the facts stated and relied upon as a basis for this suit are the same as set forth in the refund claims, in which plaintiff specifically disclaimed any desire, intention, or consent as to the reopening, disclaiming, setting aside, or modification of the offer of $2,035,721.77 in settlement and satisfaction of the controversy between the plaintiff and the Government with reference to plaintiff's entire liability for the taxable years 1918, 1919, and 1920.

The position of plaintiff as stated in its brief and argument is, in substance, that under section 821 it is entitled to a refund of delinquent interest which it alleges it paid in excess of 6 percentum on certain additional taxes for the period October 25, 1933 to August 29, 1935, both dates inclusive. It insists that this section is mandatory and that its right to recover the alleged accrued interest under the section is not affected by its accepted offer of $2,035,721.77 in settlement and satisfaction of its entire liabilities for tax and interest with respect to the three years.

The position taken by counsel for the defendant is, in substance, first, that section 821 does not apply to this case because plaintiff did not pay any 12 percent statutory delinquent interest, as such, on additional taxes, but paid only a lump sum of $2,035,721.77 offered and accepted by the Government in compromise and settlement of plaintiff's entire tax and interest liability in respect of the years 1918 to 1920, inclusive, which amount of $2,035,721.77 was $6,465.90 less than the total of the deficiencies in tax without interest claimed by the Government and computed in accordance with an opinion of the Board of Tax Appeals; second, that section 821 was not intended to apply to a case where less than the full amount of tax and accrued delinquent interest thereon of 12 percent was paid; and, third, that the compromise and settlement was final and cannot be reopened or modified under section 821.

742

Upon the facts disclosed by the record and set forth in the findings we are of opinion that plaintiff is not entitled to recover.

■ By clear language, section 821 applies and was intended to apply, as shown by the explanation made in the Senate, only in those cases where the taxpayer paid his tax and also *accrued* statutory delinquent interest at 12 percent during the period from October 24, 1933 to August 30, 1935, by reason of failure to pay the taxes shown upon its return or additional taxes assessed within ten days after notice and demand. The purpose of the section was to give relief to "those few taxpayers" who, because of an opinion of the Attorney General of October 24, 1934 (38 Op. Atty. Gen. 94), had been unable to compromise such accrued 12 percent delinquent interest. That opinion is not of importance here; it did not apply to compromise settlements in proper cases, such as the case of this taxpayer, and it was so clarified October 2, 1934 (38 Op. Atty. Gen. 98), long before plaintiff's case was settled by compromise of the disputed tax and interest liability.

A clear indication of Congressional intention would be necessary to justify an interpretation and application of section 821 so as to reopen compromise settlements of tax and interest liability where a lump-sum amount offered by the taxpayer, as the most he could pay, and accepted on that ground, under authority to compromise, is less than the disputed tax without interest determined and claimed at the time of the offer. Indication of such an intent is entirely absent in the language and explanation of the section. On the contrary, it appears clear that Congress was legislating for the relief of those few taxpayers who were unable to compromise and settle their accrued statutory liability for the 12 percent delinquent interest, rather than for the relief of those taxpayers who could and did compromise and settle their liquidated though disputed tax and interest liability.

In this case the record discloses that the Commissioner of Internal Revenue made a final determination of deficiencies for 1918 to 1920, inclusive, and mailed to plaintiff notice thereof, and that plaintiff instituted a proceeding before the Board of Tax Appeals, now the Tax Court of the United States, for redetermination thereof. The Board delivered an opinion deciding the issues presented, and a recomputation thereafter made of the deficiencies in accordance with the opinion of the Board showed a reduction of $508,900.27 in the total of the deficiencies originally determined by the Commissioner and assessed, in the meantime, under a jeopardy assessment. The total of the deficiencies so recomputed was $2,042,187.67. Upon filing the recomputation with the Board plaintiff initiated negotiations with the Government for settlement of all matters relating to its liability with reference to the deficiencies, including interest for the three years, and indicated to the Government that if a settlement could not be agreed upon it would appeal the Board's decisions on certain issues. These negotiations continued for some time and culminated in plaintiff's lump-sum offer of $2,035,721.77 on February 18, 1936, which was renewed on March 31 with the offer of a specific amount, $27,819.20, in compromise of accrued delinquent interest at 12 percent and a penalty of 5 percent on the unpaid 1920 original tax (the unpaid original 1920 tax with accrued interest of 6 percent, totaling $472,182.80, was subsequently paid in April before the offers in compromise and settlement were acted upon).

In the negotiations leading to plaintiff's offer of $2,035,721.77 and the acceptance thereof, plaintiff disputed certain issues decided by the Board; the Government stood on the deficiencies as recomputed on the Board's opinion and wanted to obtain those deficiencies, or as much thereof as plaintiff could pay. The settlement was therefore definitely a compromise of all liability with reference to the years 1918 to 1920, inclusive, for a lump sum, and not a compromise calling for payment out of the total sum offered of specific sums for specific liabilities on account of tax for each of the three years and interest in specific sums at certain rates for certain periods. If plaintiff had considered that it was making such a specific offer the interest now sought to be recovered would certainly not have been included therein.

Plaintiff's offer quoted in finding 10 shows that plaintiff was not interested in the allocation or distribution of the amount of its offer by the Government. Plaintiff asked only that upon acceptance of the lump-sum offer the proceeding before the Board "be marked settled and that an appropriate order to that effect be entered in the Board"; that the jeopardy assessment against it "for principal and interest * * * for said calendar years be cancelled and annulled"; that the proceedings in the

Board of the Pierce Petroleum Corporation for alleged transferee liability "be marked settled" and that an order be entered by the Board of no tax due in respect of such transferee liability; that the jeopardy assessment for principal and interest against the Pierce Petroleum Corporation, as transferee for 1918 to 1920, inclusive, "be cancelled and annulled"; and that the jeopardy assessment bonds and escrow surety agreements "be cancelled and annulled."

Plaintiff got exactly what it asked for in connection with the lump-sum amount of $2,035,721.77 offered and paid. The fact that the method, or mechanics, employed by the Government in closing the records of the proceeding before the Board and in the Collector's office differed somewhat from the way which plaintiff requested in its offer that they be closed is, in the circumstances, of no material importance in connection with the question whether plaintiff is entitled to recover any portion of the lump-sum amount which it paid. The evidence of record is sufficient to show that whatever allocation or disposition might have been made by the Government of the amount offered and paid by plaintiff for record and bookkeeping purposes, plaintiff would have paid no more and no less. The Government had a right to allocate or distribute the lump-sum amount offered and accepted in compromise and settlement of plaintiff's entire liability for the three years in any way it saw fit, since plaintiff made no allocation in its offer, and the allocation or distribution made by the Government did not prove that plaintiff was paying any specific sum as accrued 12 percent statutory interest as such. The proof shows that the matter of 12 percent delinquent interest in connection with the jeopardy assessment did not occur to the Government attorney handling the negotiations and settlement with plaintiff's attorneys until about two months after the settlement offer was agreed upon and made by plaintiff. This interest matter then occurred to him only because someone else in the Interest Computation Section of the Bureau of Internal Revenue called his attention to it in connection with the matter of allocating plaintiff's lump-sum offer.

Under plaintiff's offer as made and accepted and under the law relating to the finality of compromises, plaintiff was not in a position two years later to insist under section 821 of the Revenue Act of 1938 upon a return to it by the Government of $166,670.87 or of any amount of the sum paid in compromise and settlement on the sole ground that in a distribution computation made by the Government before plaintiff made payment the total sum of $972,651.64, out of $2,035,721.77, was computed and distributed for bookkeeping purposes to interest, including delinquent interest at 12 percent in the amount of $473,927.89 computed for the three years from January 13, 1933 to August 30, 1935. Plaintiff must prove not only that it intended to pay the 12 percent interest as such but that it represented a liability and that it actually paid it. Plaintiff has failed to prove this.

The agreement signed by plaintiff and the Government on April 28, 1936, after plaintiff's offer had been accepted (finding 14), does not help plaintiff. In substance that agreement was for the purpose of promptly closing the transactions on the records of the Board and the Collector's office relating to the years 1918 to 1920, inclusive, and permitting plaintiff to pay $2,035,721.77, all as near simultaneously as possible on April 30, 1936.

The interest computation on which this suit is based was not furnished to plaintiff until November 26, 1936, nearly four months after payment, when a statement of the computation was mailed to plaintiff at its request by the Deputy Commissioner of Internal Revenue. This statement showed in detail the distribution of the $2,035,721.77 to amounts designated as tax, deficiency interest at 6 percent from February 26, 1926 to January 11, 1933, delinquent interest at 12 percent from January 13, 1933 to August 30, 1935, and deficiency interest at 6 percent from August 30, 1935 to April 30, 1936. The amount of $972,651.64 so computed as interest plus amounts totaling $1,063,070.13, treated in the computation as tax for 1918 to 1920, inclusive, or as "a deficiency which is really a deficiency in payment", as it was described in the original computation, equaled plaintiff's offer of $2,035,721.77.

So far as legal or statutory delinquent interest at 12 percent in respect of the jeopardy assessment was concerned, the computation of such interest for each of the years for the period May 17, 1934, to August 30, 1935, was erroneous and unauthorized by law for the reason that plaintiff gave a bond on May 17, 1934, and no delinquent 12-percent interest accrued on and after May 17, 1934, on the jeopardy assess-

ment or on any portion thereof under the express provisions of section 273 (a), (f) and (i) or section 297, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 561–563, 568. Plaintiff of course knew that no such interest had accrued or would accrue when it made its offer and signed the agreement of April 28 and when it made payment of $2,035,721.77 on April 30, 1936. It had given the bond under section 273, Revenue Act of 1932, to stay collection and stop the running of interest at 1 percent a month, or 12 percent per annum. See sections 283 (a) and 279 (a), (f), (h), and (j) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts pages 210–212, 216, and section 273 (f) and section 294 (b) and (d), Revenue Act of 1932. These facts would seem to be sufficient proof to show that plaintiff, in its offer, did not consider that it was specifically paying interest of $250,000, computed at 12 percent, in excess of the correct statutory interest at 6 percent for the period of the stay bond May 17, 1934, to August 30, 1935. If it did consider that it was paying such 12 percent interest it was simply giving away that amount of about $250,000, for, by express provision of law, no such interest accrued or was due. Plaintiff disclaims any desire or attempt to reopen or modify the compromise settlement.

Under plaintiff's theory in this case, assuming that it is correct in saying it actually paid delinquent interest at 12 percent from October 24, 1934, to August 30, 1935, it had a cause of action on April 30, 1936, for recovery of a sum much larger than $166,670.87, i. e., approximately $250,000, representing the excess over 6 percent interest (a portion of the delinquent interest computed at 12 percent), illegally exacted for the years 1918, 1919, and 1920 for the period May 17, 1934, to August 30, 1935. Plaintiff must have known when it received a copy of the computation from the Deputy Commissioner on November 28, 1936, that due to the fact it had given a bond no amount as interest in excess of 6 percent legally accrued between May 17, 1934, and August 30, 1935. It would seem obvious that plaintiff did not then, or later, make a claim for refund on that account for the reason it did not consider it had actually paid any statutory 12 percent delinquent interest, as such, during that period and could not, therefore, recover under its accepted offer of compromise and settlement.

We think section 821, Revenue Act of 1938, gave plaintiff no better right to recover than existed as soon as the $2,035,721.77 was paid. That section expressly related only to legal interest, namely, "interest *accruing* after October 24, 1933, and before August 30, 1935, on delinquent income * * * taxes" and directed that such interest "shall be computed at the rate of 6 per centum." It then provided that "any such interest *accruing during such period* which has been *collected* * * *. in excess of such rate shall be credited or refunded." (Italics supplied). The interest which was the subject matter of this section was therefore the 12 percent statutory delinquent interest which had *legally accrued* during the period mentioned and which had actually been collected. We think it is clear that the section did not intend to give a taxpayer a new remedy for recovery of any portion of delinquent interest which did not legally accrue and which, if actually collected, was illegally exacted.

Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

WHALEY, Chief Justice, and MADDEN and WHITAKER, Judges, concur.

JONES, Judge, took no part in the decision of this case.